# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | Case No. 1:00-cr-157-21 (RCL) |
| **DEON OLIVER,** | |
| *Defendant.* | |

## MEMORANDUM OPINION

In 2004, a jury found defendant Deon Oliver guilty of aiding and abetting two murders, conspiring to distribute and possessing with intent to distribute cocaine, and conspiring to participate in a racketeer influenced corrupt organization. Judgment (ECF No. 2328) at 1–2; ECF Min. Entry 4/26/2004. For these crimes, the Court sentenced Oliver to an aggregate term of life plus sixty years' imprisonment. *See* Judgment at 1 (noting that the sentence was imposed on 12/15/2006). Today, after having served approximately fourteen years and six months of that sentence, Oliver now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 2773. He asks that the Court reduce his sentence to time served and impose home detention as a term of supervised release. *See id.* at 21. In support of his motion, Oliver argues that the COVID-19 pandemic, coupled with his many serious medical conditions, poses an extraordinary and compelling reason justifying his release. *Id.* at 10–12; ECF No. 2791. The Government opposes Oliver's motion, arguing that Oliver has not shown "extraordinary and compelling reasons" warranting an early release because he has fully recovered from COVID-19 and has refused the vaccine. ECF No. 2788.

1

Upon consideration of the parties' filings, ECF Nos. 2773, 2788 & 2791, the applicable legal standards, and the record herein, the Court will **DENY** Oliver's motion.

## I. BACKGROUND

### A. Facts & Procedural History

Defendant Deon Oliver and sixteen of his co-defendants were members of a prominent drug-distribution conspiracy that operated in Washington, D.C. from the late eighties to the late nineties. Presentence Investigation Report ("PSR") at ¶¶ 2 & 26.[1] Collectively, the members of the conspiracy committed at least twenty-seven murders and attempted several more. *Id.* at ¶ 26. Some of the homicides were connected to the organization's drug-trafficking business. *Id.* Others were committed as murders-for-hire. *Id.* As a member of the conspiracy, Oliver distributed at least five kilograms of cocaine and fifty grams of cocaine base ("crack cocaine"). *Id.* at ¶ 22. He also helped his co-conspirators murder two people. *See id.* at ¶¶ 74 & 83.

Oliver's first victim, Richard Simmons, was believed to be spreading rumors that a member of the conspiracy was cooperating with law enforcement. *Id.* at ¶ 74. So, Oliver and co-defendant Timothy Handy sought to silence Simmons. *Id.* On the night of June 30, 1997, Oliver and co-defendant Handy saw Simmons walk out of his clothing store to use a payphone. *Id.* Handy then walked up to Simmons and shot him. *Id.* Afterwards, Handy jumped into a vehicle driven by Oliver and the two sped away from the murder scene. *Id.*

Two years later, Oliver helped commit a second murder to protect the conspiracy. *See id.* at ¶ 83. When a man named Willie Floyd challenged co-defendant John Raynor's position and reputation in the organization's Northeast drug territory, co-defendant Raynor shot Floyd.

---

[1] Oliver's PSR was prepared before the entries on the docket for this matter became electronic. Accordingly, by separate order today, the Court directed the Clerk of Court to file the PSR on the docket, subject to the appropriate access restrictions.

*Id.* Oliver provided Raynor with the gun that Raynor used to commit the murder. *Id.*

Oliver also took part in the attempted murder of a man known as "Rah-Rah." *Id.* at ¶ 100. Sometime in the mid-nineties, Oliver and other co-defendants suspected that Rah-Rah had killed one of the co-defendant's brother. *Id.* To get revenge, Oliver approached a man named Oscar Veal, Jr. and asked him to kill Rah-Rah. *Id.* Veal agreed. *Id.* After one of Oliver's co-defendants provided Veal with a photograph of Rah-Rah, Oliver and two other co-defendants took Veal to a location where Rah-Rah sold drugs to look for him. *Id.* Lucky for Rah-Rah, the men could not find him, so Veal never fired a shot. *Id.*

Eventually, law enforcement put a stop to the conspiracy's drug dealing and violent acts. In November 2000, a grand jury returned a 131-count superseding indictment charging Oliver and sixteen of the other conspirators. *Id.* at ¶ 2. After a nearly eight-month trial, a jury convicted Oliver on nine counts of the superseding indictment. *Id.* at ¶ 22; *see id.* at ¶ 17. Specifically, the jury found him guilty of conspiring to distribute and possessing with intent to distribute five kilograms or more of cocaine, fifty grams or more of crack cocaine, and one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) & 841(b)(1)(A); conspiring to participate in a racketeer influenced corrupt organization, in violation of 18 U.S.C. §§ 1963 & 1962(d); two counts of aiding and abetting first-degree murder while armed, in violation of D.C. Code §§ 22-2401, 22-3202 & 22-105; two counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); and three counts of aiding and abetting the use of a firearm, in violation of 18 U.S.C. § 924(c). Judgment at 1–2; *see* PSR at ¶¶ 18, 22. For these offenses, the Court sentenced Oliver to an aggregate term of life plus sixty years' imprisonment. Judgment 3; *see* 18 U.S.C. § 924(c)(1)(D)(ii) (requiring that any term of imprisonment imposed under § 924(c) run consecutively to "any other term of imprisonment imposed").

As of today, Oliver has served approximately 14.5 years of his life sentence. *See* ECF No. 2773 at 21; *see* Judgment at 1. He is currently imprisoned at USP Hazelton. ECF No. 2788 at 6.

## B. Motion for Compassionate Release

Oliver now moves under 18 U.S.C. § 3582(c)(1)(A)(i), seeking a sentence reduction to time served with home detention as a condition of supervised release. ECF No. 2773. He argues that his many medical conditions put him at an increased risk of developing severe illness from COVID-19 and that this risk amounts to an "extraordinary and compelling" reason warranting a sentence reduction to time served. ECF No. 2773 at 2–12; ECF No. 2791 at 3–5. Specifically, Oliver says he currently suffers from congestive heart failure, aortic stenosis, cardiomyopathy, exacerbation of congestive heart failure, hypothyroidism, morbid obesity, obstructive sleep apnea, asthma, dysphagia, stricture and stenosis of the esophagus, testicular dysfunction, hypertension, two prior heart attacks, chronic ischemic heart disease, cardiac arrhythmia complete (third degree) heart block, chronic diastolic (congestive) heart failure, bacterial pneumonia, hypoxia, hypertrophy of breast, edema, Hodgkin's lymphoma, Hodgkin's disease recurrence, thyroid cancer, esophageal cancer, and hallux valgus. *See* ECF No. 2773 at 2–10.

Oliver further argues that the relevant § 3553(a) factors support his requested sentence reduction. ECF No. 2773 at 22. He points to his traumatic and difficult upbringing, as well as the "de facto disparities as a result of color, religion, national origin, or ethnicity discrimination," in the criminal justice system to argue that a sentence reduction is appropriate. *Id.* at 12–16.

The Government opposes Oliver's motion. ECF No. 2788. It argues that no "extraordinary and compelling reasons" warrant a sentence reduction because Oliver has already recovered from COVID-19 and because he was offered but refused the Pfizer-BioNTech COVID-19 vaccine. *Id.* at 16 & 26–29. The Government further argues that the § 3553(a) factors do not support a sentence

reduction. *Id.* at 30. It points to the serious nature of Oliver's offenses, Oliver's lengthy disciplinary record in prison, and his poor efforts at rehabilitation. *Id.* at 30–38.

Oliver timely replied. ECF No. 2791. His motion is now ripe for consideration.

## II. LEGAL STANDARD

A defendant seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) bears the burden of establishing that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). To be eligible for a reduction, two threshold requirements must be met. First, the defendant must have exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A). This requires a showing that "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that 30 days have elapsed since "the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Second, the defendant must show that "extraordinary and compelling reasons warrant" a reduction of his original sentence. *Id.*[2]

If the Court finds that the defendant has met his burden of showing these two requirements, the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)," after considering the relevant factors set forth in 18 U.S.C. § 3553(a). Those factors include:

---

[2] When the Bureau of Prisons files a motion for compassionate release on a defendant's behalf, a third threshold requirement must be met as well. *See United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021). In those cases, a policy statement issued by the U.S. Sentencing Commission requires a finding that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" before the Court may reduce the defendant's sentence. U.S.S.G. § 1B1.13; *see Long*, 997 F.3d at 355. Here, however, Oliver moved for a sentence reduction on his own behalf, so the Sentencing Commission's policy statement does not apply. *Long*, 997 F.3d at 335 ("[I]f a compassionate release motion is not brought by the Director of the Bureau of Prisons, U.S.S.G. § 1B1.13, by its own terms, is not applicable."); *see* ECF No. 2773.

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed —

> **(a)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(b)** to afford adequate deterrence to criminal conduct;
>
> **(c)** to protect the public from further crimes of the defendant; and
>
> **(d)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for —

> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines —
>
> > **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission and into amendments issued under section 994(p) of title 28); and
> >
> > **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced;
> >
> > . . .

**(5)** any pertinent policy statement—

> **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced;

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7).

## III. DISCUSSION

To prevail on his motion, Oliver first must show that he has exhausted his administrative remedies with the Bureau of Prisons and that there are "extraordinary and compelling reasons" warranting relief. 18 U.S.C. § 3582(c)(1)(A). Though the Court agrees with both parties that Oliver has exhausted his administrative remedies, it finds that he has not made the requisite showing of "extraordinary and compelling reasons" warranting a sentence reduction. Moreover, even if he had made that showing, the Court would nevertheless deny Oliver's motion, as the relevant § 3553(a) factors do not support a sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A) (providing that a court may reduce a defendant's sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable").

### A. Oliver Has Exhausted His Administrative Remedies

On November 25, 2020, Oliver wrote a letter to the warden of USP Hazelton requesting a sentence reduction. *See* ECF No. 2773 at 2 (citing ECF No. 2774-1 at 3–4); ECF No. 2788 at 12. The warden never responded. ECF No. 2773 at 2. Because more than thirty days from the warden's receipt of Oliver's request have elapsed, Oliver's motion is properly before the Court. *See* 18 U.S.C. § 3582(c)(1)(A) (providing that a defendant may seek a sentence reduction under § 3582(c)(1)(A) after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" *or* after thirty days have elapsed since "the receipt of such a request by the warden of the defendant's facility, whichever is earlier").

### B. Oliver Has Failed to Establish "Extraordinary and Compelling Reasons" Warranting a Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i)

Oliver argues that his many underlying medical conditions—including cancer, asthma, heart conditions, and obesity—put him at an increased risk of severe illness from COVID-19 and

that this risk amounts to an "extraordinary and compelling" reason justifying a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 2773 at 2–11. To be sure, the Court's review of Oliver's sealed medical records confirms that he has each of the conditions he lists. *See* ECF No. 2773 at 2–10 (listing his medical conditions). But given Oliver's young age, his successful recovery from COVID-19, and the current conditions at USP Hazelton, the Court disagrees.

As courts have repeatedly recognized, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Nor do Oliver's circumstances transform the COVID-19 pandemic into an "extraordinary" circumstance warranting a sentence reduction.

*First*, at age forty-four, Oliver is not at an increased risk of severe illness from COVID-19 based on his age alone.[3] According to the Centers for Disease Control and Prevention ("CDC"), the risk of developing severe illness from COVID-19 "increases for people in their 50s and increases in 60s, 70s, and 80s." Centers for Disease Control and Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 6, 2021). "People 85 and older are the most likely to get very sick." *Id.*

*Second*, although the CDC recognizes that adults of any age with cancer, asthma, heart conditions, and obesity "can be more likely to get severely ill from COVID-19," Oliver has already contracted and fully recovered from COVID-19. Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 6, 2021); ECF No. 2773

---

[3] In its opposition, the Government first says that Oliver is "age 43" but then later represents that Oliver "is 47 years old." ECF No. 2788 at 3 & 13. As indicated in the Presentence Investigation Report, Oliver is currently forty-four years old. *See* PSR at 3.

at 2–10; ECF No. 2788 at 26. And while instances of reinfection have been reported, the risk of reinfection is rare. Centers for Disease Control and Prevention, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited July 6, 2021).

*Third*, Oliver was offered the Pfizer-BioNTech COVID-19 vaccine on March 10, 2021 and refused it. ECF No. 2788 at 16. As an overwhelming number of district courts have recognized, an inmate who declines the COVID-19 vaccine without some legitimate reason has a "substantially diminshe[d] argument for release." *United States v. Piles*, No. 19-CR-292-5, 2021 WL 1198019, at *3 (D.D.C. 2021) ("Courts have recognized—without apparent exception— that a defendant's refusal to be vaccinated substantially diminishes any argument for release premised on the risk posed by COVID-19.") (collecting cases). Though Oliver certainly has the right to make his own healthcare decisions, his choice to refuse the vaccine (without, for example, a genuine religious objection) undercuts his argument that the pandemic poses an "extraordinary" circumstance justifying his release. As another district court aptly put it, Oliver "cannot, on the one hand, listen to the Center for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine." *United States v. Baptiste-Harris*, No. 2:18-CR-127-NT-1, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021).

*Finally*, no inmates or staff at USP Hazelton are currently testing positive for COVID-19. Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited July 6, 2021). In fact, as of today, approximately 67% of the inmates in the entire prison complex (FCC Hazelton) have been fully vaccinated. *Id.*; *see* Federal Bureau of Prisons, *Population Statistics*, https://www.bop.gov/mobile/about/population_statistics.jsp#bop_pop_table (last visited July 7, 2021). Though Oliver himself has refused the vaccine, the fact that two

thirds of the inmates in his prison have been fully vaccinated even further reduces his risk of reinfection. *See* ECF No. 2788 at 16–17.

For these reasons, the Court finds that Oliver's underlying medical conditions do not make the COVID-19 pandemic an "extraordinary and compelling" reason warranting a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). Without this threshold showing, the Court cannot grant Oliver his requested relief.

## C. The Relevant § 3553(a) Factors Do Not Support Sentence Reduction

Even if Oliver *had* shown "extraordinary and compelling reasons" justifying a sentence reduction, the Court would still deny his motion because it finds that the relevant § 3553(a) factors do not support a sentence reduction. In the sections that follow, the Court will address each in turn. Ultimately, it finds that none weighs in Oliver's favor.

### i.  Nature and Circumstances of the Offense

The nature and circumstances of Oliver's offenses weigh strongly against a sentence reduction. *See* 18 U.S.C. § 3553(a)(1). As a member of a brutally violent criminal enterprise, Oliver distributed significant quantities of crack and powder cocaine, helped his co-defendants murder two people, and attempted to help them murder a third. PSR at ¶¶ 26, 43, 74 & 83; Judgment at 1. Even without the violence that joined it, Oliver's drug dealing is a serious crime that took a toll on the Washington, D.C. community. *Id.* at ¶ 26. Moreover, the purpose of the murders Oliver helped commit was particularly nefarious—to ensure the profitability and longevity of the conspiracy. *See id.* at ¶¶ 74 & 83. Making matters worse, Oliver attempted to obstruct justice and conceal his crimes. *Id.* at ¶ 113. Investigations revealed that Oliver threatened a witness who testified about the murder of Willie Floyd (the second victim Oliver helped to murder) by telling the witness that Oliver was going to "beat his charge," and, upon his release

from jail, kill the witness's grandmother. *Id.* The seriousness of Oliver's conduct weighs heavily against a sentence reduction.

    ii.   <u>History and Characteristics of the Defendant</u>

Oliver's history and characteristics also weigh against a sentence reduction. *See* 18 U.S.C. § 3553(a)(1). When he was nine years old, Oliver pleaded guilty to destroying over $200 worth of property. PSR at ¶ 160. Shortly thereafter, he joined the conspiracy that gave rise to the offenses in this case. *See id.* at 3 & 9. During the roughly eleven years that he participated in the conspiracy, Oliver incurred several criminal convictions. At age sixteen, Oliver was sentenced to one year probation for possessing cocaine. *Id.* at ¶ 162. He violated the terms of his probation, which was eventually terminated. *Id.* Three years later, at age nineteen, Oliver was convicted of attempting to possess with intent to distribute cocaine and sentenced to eighteen months' probation. *Id.* at ¶ 163. When Oliver again violated the terms of his probation, the probation was revoked and he was sentenced to eighteen to fifty-four months' imprisonment. *See id.* Finally, at age twenty one, Oliver pleaded guilty to four counts of obstructing justice after Oliver verbally threatened a witness testifying in a murder trial. *Id.* at ¶ 164. The witness was gunned down the day after Oliver threatened him. *Id.*

While incarcerated, Oliver's behavior has not improved. *See* ECF No. 2788 at 36. His disciplinary records from the Bureau of Prisons show that he incurred fifteen infractions between 2008 and 2018, many of which were violent. *See id.* at 36 (referencing ECF No. 2774-1 at 2260–2264). Specifically, Oliver has been sanctioned twice for threatening bodily harm, twice for destroying property, twice for being insolent to a staff member, and once for fighting with another person, interfering with a security device, engaging in sexual acts, assaulting another person, disruptive conduct, misusing authorized medication, refusing to obey an order, refusing a work

assignment, and using martial arts/boxing. Oliver's prison records also indicate that he has not made serious efforts at rehabilitation. *See* ECF No. 2788 at 26. He has not participated in any educational courses since 2017. *Id.* And although he made some progress from 2014 to 2016, Oliver still has not completed his GED. *See id.*

Oliver argues that his traumatic and difficult childhood weighs in his favor. *See* ECF No. 2773 at 13–15. He describes a very painful upbringing involving sexual abuse, physical abuse, emotional abuse, drug abuse, incest, and neglect. *Id.* at 13–15. The Court recognizes the challenges that Oliver faced growing up. It also recognizes that Oliver joined the Gray conspiracy at a very young age. *See* PSR at 3 & 9. Yet even as an adult, Oliver continues to engage in violent and disruptive behavior. In fact, his most recent disciplinary infraction (fighting with another person) occurred in early 2018 when Oliver was forty-one years old.

Taken together, Oliver's record before and after his incarceration strongly suggests that, if released, Oliver would continue to engage in illegal and violent behavior. His lack of rehabilitative efforts further indicates that he would not have the skills needed, or take the steps required, to successfully reintegrate into the community if released. Although the Court acknowledges Oliver's extremely difficult childhood, his lengthy criminal history and poor track record in prison weigh against a sentence reduction.

    iii.   <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence</u>

The need for the sentence imposed to reflect the seriousness of the Oliver's offenses, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct also weighs heavily against a sentence reduction. *See* 18 U.S.C. § 3553(a)(2)(A)–(B). The Court imposed an aggregate sentence of life plus sixty years' imprisonment for Oliver's offenses.

*See* Judgment at 3. Reducing his sentence to time served after 14.5 years would be a windfall to Oliver and would not provide just punishment for his serious offenses. Nor would such a drastic sentence reduction afford adequate deterrence or promote respect for the law. Allowing Oliver to walk free after serving 14.5 years of his life-plus-sixty-years sentence would send a message to the public that criminals who deal drugs and help commit murders will be punished leniently.

Oliver argues that reducing his sentence to time served is just because of the "persistence of de facto disparities as a result of color, religion, national origin, or ethnicity discrimination," and due to "the persistence of law enforcement practices relying to any degree on these factors as the basis for criminal suspicion and investigation." ECF No. 2773 at 16. Any disparities in the criminal justice system, however, do not change the fact that a jury found Oliver guilty of nine offenses. To the extent that Oliver challenges the validity or fairness of those convictions, a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is not the proper vehicle to do so.

    iv.   The Need to Protect the Public from Further Crimes of the Defendant

The need to protect the public from further crimes also weighs against a sentence reduction. *See* 18 U.S.C. § 3553(a)(2)(C). Oliver began committing crimes at age nine and has a serious criminal history. *See* PSR ¶¶ at 160–182. He has repeatedly obstructed justice, has aided and abetted multiple murders, and has dealt significant quantities of narcotics. *Id.* at ¶¶ 113 & 160–82. Moreover, Oliver's record indicates that his criminal tendencies have continued while incarcerated. As noted above, Oliver incurred fifteen infractions between 2008 and 2018, many of which involved violent behavior. Nor has Oliver made significant efforts at rehabilitation, which further suggests that he may reoffend if released. Accordingly, this factor weighs against a sentence reduction.

v.    The Need to Provide the Defendant with Needed Medical Care in the Most Effective Manner

Although Oliver suffers from many medical conditions, he does not suggest that his early release would give him access to medical treatment that he does not already have access to in prison. *See* ECF No. 2773 at 2–10; *see id. generally.* Accordingly, the Court finds that this factor does not weigh in favor of a sentence reduction.

vi.    The Sentencing Range Established by the U.S. Sentencing Guidelines

Next, the sentencing range established for Oliver's offenses that was in effect on the date Oliver was sentenced also weighs against a sentence reduction. *See* 18 U.S.C. § 3553(a)(4)(A). At the time he was sentenced, the U.S. Sentencing Guidelines established a range of life imprisonment for his offenses. *See* PSR at ¶ 210. Releasing Oliver after serving only 14.5 years would afford him a sentence significantly shorter than that recommended by the Sentencing Guidelines. Thus, this factor too weighs against a sentence reduction.

vii.    The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

Oliver argues that "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" weighs in favor of a sentence reduction because crack-cocaine offenders "continue[ ] to be punished" more severely than powder-cocaine offenders. ECF No. 2773 at 21. These arguments, however, fundamentally misunderstand the nature of the Court's inquiry on this § 3553(a) factor. Defendants sentenced for offenses involving crack cocaine do not all have "similar records." 18 U.S.C. § 3553(a)(6). And given that crack-cocaine offenses range from low-level dealers to drug kingpins, not all crack-cocaine offenders have "been found guilty of similar conduct." *Id.* Moreover, the Court notes that

Oliver was convicted of conspiring to distribute *both* crack cocaine *and* powder cocaine. Judgment at 1. Contrary to Oliver's assertion, then, this factor does not weigh in his favor.[4]

viii.    The Kinds of Sentences Available and the Need to Provide Restitution

The final two § 3553(a) factors—the kinds of sentences available and the need to provide restitution to any victims—are not relevant to the present inquiry. *See* 18 U.S.C. § 3582(c)(1)(A) (providing that courts must consider "the factors set forth in section 3553(a) *to the extent they are applicable*") (emphasis added). Here, Oliver seeks a reduction of his term of imprisonment to time served, so the issue of restitution is not relevant. Nor is the Court sentencing Oliver in the first instance, so the "kinds of sentences available"—e.g., incarceration, probation, supervised release, restitution, a fine—is not a factor the Court considers at this posture. Needless to say, neither of these factors move the needle either way.

In sum, the Court finds that relevant § 3553(a) factors do not support a sentence reduction. In fact, most of the factors strongly weigh *against* a reduction. So even if Oliver had demonstrated some "extraordinary and compelling" reason warranting relief, the Court would nevertheless deny his motion.

## IV. CONCLUSION

For the reasons explained above, Oliver's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), ECF No. 2773, will be **DENIED** by separate Order.

Date: July 12, 2021

Hon. Royce C. Lamberth
United States District Judge

---

[4] Defense counsel also adds that Oliver "appears eligible for First Step Act Relief." ECF No. 2773 at 21. A motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), however, is not the proper vehicle to bring a claim for relief under the First Step Act.